[Civ. No. 22026. Fourth Dist., Div. One. June 23, 1980.]

## CHULA VISTA POLICE OFFICERS' ASSOCIATION,
Plaintiff and Appellant, v.
LANE F. COLE, as City Manager, etc., et al., Defendants and
Respondents.

---

## COUNSEL

Harrington, Waddell & Briggs, Thomas R. Waddell and Waddell, Briggs & Beccarelli for Plaintiff and Appellant.

George D. Lindberg, City Attorney, for Defendants and Respondents.

Richard L. Knickerbocker, City Attorney (Santa Monica), as Amicus Curiae on behalf of Defendants and Respondents.

---

## OPINION

**GREER, J.\***—The Chula Vista Police Officers' Association (CVPOA) appeals the judgment of the superior court denying its request for an alternative writ of prohibition/mandate. The CVPOA contends the city, in requiring its members to provide a signed sworn statement or doctor's certificate as verification of illness for leaves of absence of four days or less, is violating the express provisions of the employment contract.

### Statement of Facts

At the time of the hearing all parties concurred with the following:

The CVPOA is an employee organization within the meaning of Government Code section 3500 et seq., and in compliance with section 3508. The City Council of Chula Vista is the legislative body charged under the charter of the city with the responsibility for governing the city and the expenditure of city funds. Lane F. Cole is the duly appointed City Manager of the City of Chula Vista, responsible to the city council for the enforcement of the laws of the state pertaining to the city, the provisions of the charter, and the ordinances of the city.

 Six months before the date in question, the city and representatives of the CVPOA were involved in meet and confer sessions

---

*Assigned by the Chairperson of the Judicial Council.

negotiating a new memorandum of understanding to establish salaries and fringe benefits for the fiscal year 1978-1979. In September 1978 it became apparent the negotiations were deadlocked. On Sunday, October 29, 1978, an unusually high number of police officers began calling in sick. For a period of a week, ending November 7, 1978, intermittent instances of abnormally high sick leave were reported. During the last two days of October several notices from the city attorney and responses from the CVPOA culminated in a directive requiring all Chula Vista police officers to provide a doctor's certificate or a signed sworn affidavit as verification of illness for leave of absences which had occurred. The officers were then notified that sick leave absences during this period would be classified as "Leave without pay" regardless of duration unless the department was furnished with a doctor's certificate or sworn affidavit.

Historically under rule IX, section 3, subsection (b) of the Civil Service Rule, the City of Chula Vista has not required verification of sickness for leaves of absence of less than four days.[1] The reason for the city's use of the new interpretation of the rule was stated in a memorandum to the CVPOA from the chief of police dated October 30, 1978: "This is to advise you that the City Manager, on the advice of the City Attorney, is requiring that all sick leave absences, regardless of duration, will be honored only upon the presentation of a doctor's certificate showing the nature and the cause of the sickness.

In normal circumstances, the Civil Service rules require a certificate of a doctor or a personal affidavit for the use of more than four working days of sick leave. However, it is evident that a labor dispute now exists with the Police Officers Association. In order to establish the fact that such sick leave usage does not constitute a job action, which would automatically categorize all sick leave as leave without pay, it is necessary to impose this requirement. Anyone represented by the Police Officers Association failing to provide such certificate will have any time absent from work charged as leave without pay."

*Ruling of the Trial Court*

The petition of the CVPOA was denied based upon an interpretation of the civil service rules allowing the city to make a demand for verification of illness when it desired to do so. The trial court stated:

---

[1] This section has been in effect since 1973.

"[A]lthough the Civil Service Rules do not require the respondent city to seek verification where an employee is absent due to sickness or injury of less than four (4) days in duration, that the employer is not precluded from seeking such verification."

No determination was requested or made as to whether any police officer was ill or feigning illness during the times in question.

### The Agreement of the Parties

The court limited its consideration to only one portion of the contract: Rule IX, section 3, Civil Service Rules of the City of Chula Vista. These rules are only a portion of the contract.

All contracts, whether public or private, are to be interpreted by the same rules (Civ. Code, § 1635). "[A]ll modern California decisions treat labor-management agreements whether in public employment or private as enforceable contracts...which should be interpreted to execute the mutual intent and purpose of the parties." (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 339 [124 Cal.Rptr. 513, 540 P.2d 609].)[2] The whole of the contract should be considered so as to give effect to every part (Civ. Code, § 1641; *Newby* v. *Anderson* (1950) 36 Cal.2d 463, 470 [224 P.2d 673]; *Rosen* v. *E. C. Losch Co.* (1965) 234 Cal.App.2d 324, 330 [44 Cal.Rptr. 377]).

Here the contract was comprised of the memorandum of understanding approved by resolution of the City of Chula Vista. The memorandum once approved by the city council is binding upon the parties (*Glendale City Employees Assn., Inc.* v. *City of Glendale, supra*, 15 Cal.3d 328, 334-338).

Section XI of the memorandum provides: "It is further understood and agreed that any other benefits and working conditions and the terms and conditions thereof presently in effect shall remain unchanged (except for amendments to the Civil Service Rules which liberalize employee benefits) unless and until said terms and conditions shall be

---

[2]The *Glendale* case refers specifically to Civil Code section 1636: "'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful.'" (*Glendale, supra*, at p. 339, fn. 16.)

modified as a result of meeting and conferring in good faith between the City and the Chula Vista Police Officers Association."

Thus the civil service rules in effect for 1978 must be read as part of the agreement. The trial court limited its ruling to rule IX, section 3(b) which provides: "Request for Sick Leave:

". . . . . . . . . . . . . . . .

"A doctor's certificate or a personal affidavit showing the nature of and cause of sickness or injury must be furnished to the employee's immediate supervisor, for file in the employee's personnel jacket, upon return from an absence necessitating the use of more than four (4) working days of sick leave. A doctor's certificate or personal affidavit must also be presented by the employee before returning to work to his immediate supervisor in all cases when the employee has been exposed to a contagious disease and for all office visits for medical or dental treatment."

The preamble to article IX, section 3 provides: "The objective of this section is to provide orderly methods of furthering the health and safety of city government employees and aiding employees to do better work. Sick leave, under this rule, is not a right which an employee can use at his discretion, but a privilege which can be allowed only in case of necessity and actual sickness or injury...which compel an employee to be absent from work."

We are required to consider all of these provisions in order to give "...effect to every part, if reasonably practicable...." (Civ. Code, § 1641.)

*The Importance of Public Employees Contracts*

The *Glendale* case, *supra*, after tracing the history of the Meyers-Millias-Brown Act, succinctly sets out the importance of the public employees contract both to the stability of government and to the individual employee and provides in the strongest terms: "Why negotiate an agreement if either party can disregard its provisions? What point would there be in reducing it to writing, if the terms of the contract were of no legal consequence? Why submit the agreement to the governing body for determination, if its approval were without significance? What integrity would be left in government if government itself

could attack the integrity of its own agreement? The procedure established by the act would be meaningless if the end-product, a labor-management agreement ratified by the governing body of the agency, were a document that was itself meaningless.

"The Legislature designed the act, moreover, for the purpose of resolving labor disputes. (See Gov. Code, § 3500.) But a statute which encouraged the negotiation of agreements, yet permitted the parties to retract their concessions and repudiate their promises whenever they choose, would impede effective bargaining. Any concession by a party from a previously held position would be disastrous to that party if the mutual agreement thereby achieved could be repudiated by the opposing party. Successful bargaining rests upon the sanctity and legal viability of the given word." (*Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra*, 15 Cal.3d 328, 336.)[3]

■ Particular care should be taken by courts when interpreting civil service employment contracts (*International Assn. of Fire Fighters Union* v. *City of Pleasanton* (1976) 56 Cal.App.3d 959, 968 [129 Cal.Rptr. 68]). Since the bargaining power of public employees has been severely limited by statute (Meyers-Millias-Brown Act; Gov. Code, § 3500 et seq.) when dealing with such contracts, every effort should be made to give full effect to the actual understanding of the parties so as to uphold the integrity of the agreement (*Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra*, 15 Cal.3d 328, 336). We recognize the importance of this agreement and decline to distort its language to reach a conclusion.

### The City's Alternative Under the Employment Contract

■ There is no basis for this court to determine whether a strike had occurred or any member of the CVPOA reporting sick was not in fact ill. What is more important, in the context of this litigation, is what the city manager could reasonably perceive to be occurring in October 1978, and what remedy was available to him under the terms of the then existing employment contract.

---

[3]It further stated the purpose of the 1968 act was to strengthen employee and employer communication and to provide for a reasonable method of resolving disputes regarding wages, hours, and other terms of employment.

Rule VIII, section 3, sets out a specific procedure for the employer to follow if "...an employee has been absent without leave, contrary to the rules of the commission...." If the city manager suspected an officer had violated the civil service rules, his remedy was to initiate proceedings under the civil service provisions. Rule VIII was obviously drafted as a discovery device when it provided "...if such absence...is excusable the commission may dismiss the charges." To bestow upon the city the powers to indiscriminately require verification of a claimant's illness opens the door to potential abuse. At some point a vengeful supervisor may misuse this authority to harass a particular employee against whom he holds a grudge. Such a result is intolerable and would violate the terms of the negotiated agreement.

Analysis of the four corners of the agreement demonstrates the interpretation given to the employment contract by the court below is dangerously oversimplified.

Nowhere in the employment contract is the city specifically given the authority to require verification for absences necessitating the use of less than four days sick leave; its silence as to the verification of illness for any lesser period implies no such conditions may be imposed. This implication is bolstered by the fact no verification has ever been required in the past for less than four days of illness. Action by the parties occurring after the adoption of the applicable civil service rules may be looked to in determining the meaning of the rules (*Davies Machinery Co.* v. *Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 26 [113 Cal.Rptr. 784]; *Spott Electrical Co.* v. *Industrial Indem. Co.* (1973) 30 Cal.App.3d 797, 808 [106 Cal.Rptr. 710]).

The city manager has the affirmative duty to enforce the rules of the civil service commission which were given full effect under the terms of the employment contract. The rules do not provide for verification of illness for absences of four days or less or permit the withholding of sick leave benefits in such cases.

The rules do provide the city with a remedy against an employee who is absent without leave contrary to the rules of the commission (not actually sick or injured). If the city manager suspected a "sick-out" was occurring his remedy under the contract was to initiate proceedings against the employees under rule VIII of the civil services rules. The city failed to comply with the terms of the employment contract by unilaterally charging as leave without pay any sick leave of officers who

failed to furnish verification of illness for sick time of less than four days. If the city desired to alter its rule to afford it more protection from a possible future "sick-out" it was within its power to renegotiate the agreement in the following year.[4]

█ Mandamus lies in an action to enforce a public employee's memorandum of understanding (*Glendale City Employees' Assn., Inc. v. City of Glendale, supra*, 15 Cal.3d 328, 343). The action brought by the CVPOA for an alternative writ was proper.

The case is remanded to the superior court and the court is directed to issue a peremptory writ of mandate to grant the relief requested in accordance with this opinion.

Staniforth, Acting P. J., and Wiener, J., concurred.

---

[4]In fact, shortly after argument was heard in the superior court, the parties entered into an agreement to amend the civil service rules as follows:

### "SICK LEAVE VERIFCATION

"The city may, in its discretion, require a doctor's certificate and/or a personal sworn affidavit verifying the nature, severity and cause of the disabling injury or illness of the employee to determine eligibility of sick leave. If an employee is required to furnish a doctor's certificate for absences of three days or less, the employee must have been notified of such requirement by the direction of the Chief of Police at or about the time the employee notifies the department that he/she will be absent because of illness or disability.

"(Provision 2.15 (III)(E) of the Memorandum of Understanding between the Chula Vista Police Officers Association and the City of Chula Vista, adopted by the City Council for the City of Chula Vista, June 28, 1979.)"

This agreement was properly negotiated, included into a written memorandum of understanding presented to the city council and duly adopted.