[Civ. No. 7374. Fifth Dist. Jan. 17, 1984.]

ALLAN ATCHLEY et al., Plaintiffs and Appellants, v.
CITY OF FRESNO, Defendant and Respondent.

638

## COUNSEL

Staniford, Harris, Loomis & Home and W. Stuart Home for Plaintiffs and Appellants.

James A. McKelvey, City Attorney, Edwin A. Oeser, Assistant City Attorney, and Douglas C. Holland, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**GALLAGHER, J.**\*—On May 12, 1980, appellants filed a complaint for declaratory, injunctive and compensatory relief. A court trial was held in March 1982. The court entered judgment for respondent City of Fresno.

### STATEMENT OF THE FACTS

Allan Atchley, Curtis Bosch, Jack Enos, Duane Garey, and Mark Smith are retired employees of the police department of respondent City of Fresno. Each appellant is receiving a retirement benefit from respondent City of Fresno due to a service-connected disability.

The Council of the City of Fresno established two retirement systems in 1955. One of these systems is the fire and police retirement system (Fresno Mun. Code, § 2-1702)[1] which is administered by the retirement board (§ 2-1703).

All members of the system may become eligible for service retirements or disability retirements. The general provisions pertaining to service and disability retirements are contained in sections 2-1727 through 2-1731, inclusive. A service retirement is generally awarded to any member who has been a member for at least 10 years and is at least 50 years of age. A

---

\*Assigned by the Chairperson of the Judicial Council.

[1]All code references are to the Fresno Municipal Code unless otherwise indicated.

disability retirement is generally awarded to any member physically or mentally incapacitated for the performance of his duties. There is no minimum age for disability retirement and there is no minimum length of service if the disability was incurred in the line of duty. "Ordinary disability" refers to a disability which was incurred in a manner unrelated to employment. "Industrial disability" refers to a service-connected disability.

Section 2-1731, subdivision (c)[2] requires the retirement board to reduce, under certain circumstances, the monthly pension of a pensioner who, prior to attaining age 50, engages in a gainful occupation. The pension is reduced to an amount which when added to his monthly compensation of such occupation, does not exceed the amount of the compensation currently being paid to members at the rank the retiree held at the time of retirement. This concept of reducing the pension pursuant to this formula is referred to as the "earnings test."

The gravamen of appellants' complaint is that the City of Fresno has required each of the individual appellants to file a quarterly report of their outside income and asserts the right to either compel an audit or to withhold those retirement benefits until such quarterly report or audit is made. Each appellant is a retiree being paid retirement pay, and each has a form of outside income. Based on section 2-1731, subdivision (c), the respondent City of Fresno undertook to determine the amount of said outside income for each appellant, and deducted a certain amount by withholding the amount from appellants' retirement benefits.

The controller and director of finance for respondent City of Fresno, Walter Berg, discussed implementation of the "earnings test" with the retirement board in 1960. Subsequent to that meeting, the current practice of auditing and withholding retirement benefits where excess outside income was present, was adopted. Richard Turner, a senior account auditor in charge of the retirement section in the department of finance for respondent City of Fresno, testified that no written policy existed for the implementa-

---

[2]Section 2-1731, subdivision (c) reads as follows: "Should any person retired for disability or service engage in a gainful occupation, prior to attaining age fifty, the Board shall reduce the amount of his monthly pension as defined herein to an amount which, when added to the compensation earned monthly by him in such occupation, shall not exceed the amount of the compensation attached to the rank which he held at the time of his retirement. Should the earning capacity of such beneficiary be further altered, the Board may further alter his said pension to an amount which shall not exceed the full amount to which he would be entitled under this article in the absence of engagement in such occupation, but which, subject to such limitation, shall equal, when added to the compensation earned by him, the amount of the compensation attached to said rank. When said beneficiary reaches age fifty, his retirement allowance shall be made equal to the full amount to which he would be entitled under this article in the absence of engagement in such occupation, and shall not again be modified because of earnings other than under employment by the city."

tion of the "earnings test" other than the explanation that appears on the reporting form.

## DISCUSSION

I. The withholding of retirement benefits for failure to file report forms was lawful.

Appellants contend it was error for the trial court to fail to determine the unlawfulness of withholding of disability benefits for failure of the beneficiary to file report forms. Appellants argue that there is no statutory requirement for the filing of the report forms, and the attempt to impose the reporting requirement is an impairment of the contractual right to said benefits as a part of the employment contract. Appellants cite *Winslow* v. *City of Pasadena* (Cal.App.).

A hearing was granted in the *Winslow* case, and the Supreme Court's opinion is cited as *Winslow* v. *City of Pasadena* (1983) 34 Cal.3d 66 [192 Cal.Rptr. 629, 665 P.2d 1]. In the now defunct opinion filed by the Second District Court of Appeal, it was held that the trial court erred in denying a former city police officer's petition for a writ of mandate by which he sought to set aside the city's action terminating his medical disability retirement pension and ordering him back to duty in a newly created "light duty" assignment. The decision rested on the case authority of *Newman* v. *City of Oakland Retirement Bd.* (1978) 80 Cal.App.3d 450 [145 Cal.Rptr. 628]. The Supreme Court affirmed the trial court's decision.

Winslow was employed by the City of Pasadena Police Department as a police officer in 1958. In 1975, serving as a motorcycle officer, he developed an employment-connected disease. He was granted a service-connected disability retirement continuing "until further order of the Retirement Board." In 1979, a number of light duty positions were created in the department, including that of "desk officer." The retirement board had Winslow reexamined to determine his eligibility for this type of service, and after a hearing, recommended his reinstatement based on the finding that Winslow was not totally disabled, and that his physical condition "has ceased to disable him from service as a police officer with the assignment as desk officer. . . ." Winslow then filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5. (*Winslow* v. *City of Pasadena, supra,* 34 Cal.3d 66, 67-68.) The trial court found that the weight of the evidence supported the board's action and concluded that the board's action did not constitute a change in policy impairing Winslow's vested pension rights.

The Supreme Court held in *Winslow* that the assignment did not constitute a change in policy which unconstitutionally impaired the officer's vested

pension rights, where, when an officer retired, there was no guarantee or reasonable expectation that the department would not create new positions, where the retirement was subject to further order of the retirement board, and where the reinstatement involved no policy change and was consistent with the city charter, which did not require conditioning reinstatement an officer's capacity to serve either as a motorcycle officer or in every other police position; rather, the charter permitted reinstatement to any equivalent position which the officer's health permitted. The court distinguished the case of *Newman* v. *City of Oakland Retirement Bd.*, *supra*, 80 Cal.App.3d 450.

In *Newman,* a police officer who had suffered a gunshot wound in his right wrist was mandatorily retired in 1974. Two years later, the city's retirement board voted to reinstate him. On appeal, the *Newman* court noted that from the time of his employment until his retirement, the city applied a "full-range-of-duties" standard, meaning that an officer could not be recalled to active duty unless his recovery from disabling injury permitted his performance of all of the duties of a regular police officer. Thereafter, the board adopted a new test which authorized the recall of an officer to an available position when he could perform a "reasonable range" of police duties. (*Id.,* at p. 453.) The *Newman* court found that use of this test was an adoption of a new standard constituting a change in policy. The board's retroactive application of this policy, it was held, violated Newman's fully matured and vested contractual right to pensionable status. (*Id.,* at pp. 462-463.)

*Newman,* as explained by the Supreme Court in *Winslow,* involved a change in policy because it entailed a substantial alteration of the basic conditions under which an employee could be recalled. When Winslow retired, however, there was neither guarantee nor reasonable expectation that the department would not alter its internal structure periodically, by creating, eliminating, or restructuring necessary positions or rearranging existing assignments. Nor was there a requirement that an active officer be able to serve in every possible assignment. Indeed, the record disclosed that the city's policy "in the past" had been to provide light duty assignments to injured employees. (*Winslow* v. *City of Pasadena, supra,* 34 Cal.3d 66, 69.)

The Supreme Court, therefore, focused on whether or not the reinstatement involved a change in policy which entailed a substantial alteration of basic conditions under which an employee could be recalled. (*Id.,* at pp. 70-71.)

Next, appellants rely on *Chula Vista Police Officers' Assn.* v. *Cole* (1980) 107 Cal.App.3d 242 [165 Cal.Rptr. 598] for the proposition that unless

there is some provision for reporting the outside income, there is no duty to report it, and the City of Fresno, according to appellants, cannot impose a duty without a change in the contract.

In *Chula Vista,* the court held that the defendant city had failed to comply with the terms of the employment contract which required verification of illness or sick leave of four days or more. The court determined that the agreement's silence as to the verification of illness or sick leave of less than four days implied that no such condition could be imposed. When the defendant city began imposing a requirement for said verification during a "sick-out" the court held that the municipality violated the established and express terms of the civil service rules and failed to pursue the established remedy available under the terms of the then existing employment contract to ferret out an employee's abuse of sick leave.

*Chula Vista* is not applicable to the instant case in that the municipality in *Chula Vista* violated established and express terms of the civil service rules. As will be explained, such is not the case here.

Lastly, appellants cite *Olson* v. *Cory* (1980) 27 Cal.3d 532, 538 [178 Cal.Rptr. 568, 636 P.2d 532] for the proposition that "If there is an unabridged right to receive vested benefits, there can be no subsequent impairment." In *Olson* the trial court declared unconstitutional legislation which limited an annual cost-of-living increase in judicial salaries to a maximum of 5 percent beginning on July 1, 1977, which were previously calculated strictly according to the California consumer price index. The amendment was effective January 1, 1977. The trial court ruled the statute unconstitutional on the grounds it constituted an impermissible impairment of vested contractual rights. The Supreme Court affirmed the judgment as to any judge who served any portion of his term or the unexpired term of a predecessor judge prior to January 1, 1977, and as to judicial pensioners whose benefits were based on the salary for the office of such a judge. The Supreme Court reversed the judgment in all other respects. The high court held that the statute as it purportedly limited cost-of-living salary increases provided by the statute before its amendment was unconstitutional as to judges during any term or any unexpired term of a predecessor judge if such portion of said term was served prior to January 1, 1977, and judicial pensioners whose benefits were based on some proportionate amount of the salary for the office of such a judge. However, the Supreme Court also held that a judge or justice who completes a protected term and voluntarily embarks upon a new term can no longer claim to serve in a protected term, and his or her compensation would thereafter be governed by the provisions of the new legislation. (*Id.,* at pp. 546-548.) Thus, the *Olson* decision is consistent with the general rule that an employee has a vested contractual right to a

pension consistent with the pension system existing at the time employment is accepted. Therefore, *Olson* does not support appellants' contention as will hereinafter be explained.

■ A public employee who serves under a pension system similar to those contained in the Fresno Municipal Code acquires a vested contractual right to a substantial pension. This right arises before the happening of the contingency which makes the pension payable, and it cannot be constitutionally abolished by subsequent changes in the law. (*Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852-856 [179 P.2d 799].) The courts have recognized that a public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension. (*Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 183 [265 P.2d 884]; *Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614].) When a city originally sets up its pension system it has rather wide latitude in prescribing the terms and conditions for retirement, and it may adopt restrictions that would be considered unreasonable impairments of the contract if subsequently imposed upon employees who have served under the pension plan. (*Wallace* v. *City of Fresno, supra,* 42 Cal.2d 180, 183.)

The "earnings test" provided in section 2-1731, subdivision (c) appears in California cases which involve questions regarding pension benefits. Although the "earnings test" itself was not challenged, the decisions impliedly approved the test. (*Brophy* v. *Employees Retirement System* (1945) 71 Cal.App.2d 455 [162 P.2d 939]; *Burger* v. *Employees' Retirement System* (1951) 101 Cal.App.2d 700 [226 P.2d 38].)

Respondent relies on the case of *Berry* v. *City of Portsmouth, Virginia* (4th Cir. 1977) 562 F.2d 307 in which an "earnings test," authorized by a city ordinance, somewhat similar to that in the instant case, was challenged by plaintiffs who alleged they had been denied their constitutional rights, including, but not limited to, equal protection under the laws, substantive and procedural due process, and freedom from involuntary servitude. In *Berry,* the City of Portsmouth enacted a city ordinance authorizing the reduction of disability retirement payments if a disabled city employee resumed gainful employment or refused employment suitable to his capacity. The ordinance was enacted in 1961. Although the board of trustees of the fire and police retirement system (the Board), knew that some disabled employees were gainfully employed, from 1961 to 1975 it paid all disabled employees an unreduced pension. But in 1975, the ordinance was amended by the city council to require employees on disability retirement to submit

to the Board's secretary "at least once each year during the first five years following retirement. . . such information as the Board may deem appropriate concerning any gainful employment, and the compensation therefor. . . ." The Fourth Circuit held: "When the City enacted its plan for certain individuals to receive disability benefits under certain conditions, it reserved the right in the Board to reduce payments if the disabled employee resumed gainful employment or refused employment suitable to his capacity. Neither the Board nor the City ever relinquished the right to reduce pensions. It was only through the Board's grace that gainfully employed disabled workers continued to receive unreduced payments until 1975. The employees have no property right to continued unreduced payments, paid in the first place in the discretion of the Board, necessary to invoke procedural due process protection . . . ." (*Id.*, at p. 311.)

In the instant case, section 2-1731, subdivision (c) was part of the fire and police retirement system which was established by the council of the City of Fresno on July 1, 1955. (§ 2-703.)

On November 9, 1960, the controller and director of finance for the City of Fresno met with the police and fire retirement board and discussed implementation of the earnings test. An actuary drafted the form ultimately used and subsequent to that meeting the practice was adopted. It was conceded in the lower court that no formal resolution was adopted setting forth specific guidelines or procedures for the implementation of the earnings test. As each appellant became a member of the retirement system after July 1, 1955, the authority to reduce payments if a disabled employee resumed gainful employment was a preexisting term and condition of receiving disability benefits. Thus, the right to reduce payments does not constitute a subsequent change in the individual's right to receive disability benefits or the amount to which a retiree was statutorily entitled.

The question remains would the *enforcement* of the board's right to reduce payments, in the manner adopted, amount to a subsequent and intolerable impairment of the contract right. ■ "'An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citations.] Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, *and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.*

[Citations.] . . .' " (*Betts* v. *Board of Administration, supra,* 21 Cal.3d 859, 864; italics in original.)

While an employee's vested contractual pension rights may be modified prior to retirement, the enforcement procedures in question do not rise to the level of a modification. The reporting requirement does not reduce or alter the amount of disability benefits to which the appellants are entitled. It is simply an implementation of a preexisting restriction.

*Olson* v. *Cory* is entirely consistent with the principle that an employee is entitled to the pension benefits in effect at the time of his employment. In the present case, the earnings test was a statutory provision of the system at the time of their employment and has not been modified, or changed, but merely implemented and enforced. Therefore, the trial court did not err as a matter of law in upholding the lawfulness of the withholding of retirement disability benefits for failure to file the required report forms.

II. The withholding of retirement benefits by way of audit did not violate the prohibition in the ordinance against seizure.

Appellants claim that section 2-1706 prohibits the withholding of disability benefits for failure to file the quarterly report form on the basis that said section provides exemption from execution. This argument is clearly without merit.

Section 2-1706 provides: "The right of a person to a pension, annuity, a retirement allowance, or the return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit, or any other right or benefit accrued or accruing to any person under the provisions hereof and the moneys in the fund created herein, shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable; provided, however, that the right of any member to the return of contributions upon his permanent separation from the service may be assigned by such member to any credit union in which eligibility for membership is limited to persons employed or formerly employed by the city, as collateral for any loan made by such credit union directly to such member; and provided further, that no such assignment by a member to a credit union shall be deemed a waiver by such member of his right, under any provision of this article, to allow his accumulated contributions to remain in the Retirement Fund. Assignments permitted hereunder shall be deemed acknowledged by the city upon the filing thereof with the Controller, but the city, its officers and employees shall not be liable to any credit union for any loss or damage on account of failure for any reason to give effect to any such assignment."

A writ of execution is the process authorizing the seizure and appropriation of the property of a defendant for the satisfaction of a money judgment against him. (5 Witkin, Summary of Cal. Law (8th ed. 1974) p. 3388.) Appellants offer no authority, nor analysis, for the proposition that the conduct of respondent City of Fresno qualifies as an execution prohibited by the terms of section 2-1706. ■ Where a point is merely asserted by appellant's counsel without any argument of or authority for the proposition, it is deemed to be without foundation and requires no discussion by the reviewing court. (*People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282 [188 Cal.Rptr. 123].)

■ Next, appellants contend that "if, by some incredible means, it is determined the conduct of FRESNO was not an execution. . . [t]hen the plaintiffs are asked to forfeit the benefits of (i) having served FRESNO, and (ii) sought outside income. Such forfeiture is clearly and expressly forbidden." Appellants then merely cite Municipal Code section 2-1735.

Section 2-1735 provides: "Subject to compliance with this article, nothing shall deprive a member of the right to a retirement allowance as determined under it, after he has qualified as to service and disability for retirement for disability, or as to age and service for retirement for service."

Again, appellants cite no authority nor offer legal analysis for the contention that the enforcement of section 2-1731, subdivision (c) constitutes a forfeiture. Section 2-1735 clearly requires compliance with this article, which inherently includes compliance with the implementation and enforcement of section 2-1731, subdivision (c).

Section 2-1703, which created the retirement board, also set forth the board's powers and duties. Subdivision (b) provides: "The Board shall have the sole power and authority to hear and determine all facts pertaining to applications for and awards of any benefits under the System, or any matters pertaining to the administration thereof." Furthermore, section 2-1712 provides that each member and beneficiary "shall be subject to all the provisions hereof and to all the rules and regulations adopted by the Board, and shall furnish to the Board such information effecting his status as a member or beneficiary of the System as the Board may require." Thus, the administration of the pension fund is vested in the retirement board which may promulgate rules and regulations designed to provide for the effective administration of the board's business.

■ The construction of a municipal ordinance or resolution is governed by the rules governing construction of statutes. (*In re Yick Wo* (1885) 68 Cal. 294 [9 P. 139], revd. on other grounds, 118 U.S. 356 [30 L.Ed. 220,

6 S.Ct. 1064].) A basic rule of statutory interpretation requires that courts avoid a construction which renders a part of the statute or ordinance "surplusage." (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580].)

Under well established principles the contemporaneous administrative construction of a statute or ordinance by the administrative agency charged with its enforcement is entitled to great weight and will be followed unless clearly erroneous. (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].)

In this case, the requirement of the filing of the quarterly reporting form is merely an extension of the operative provisions of section 2-1731, subdivision (c).

Civil Code section 1655 provides: "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention."

Civil Code section 1656 provides: "All things that in law or usage are considered incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded."

The reduction in disability benefits when the retiree is gainfully employed and under the age of 50, and such gainful employment generates income which provides the retiree with income in an amount exceeding the current salary level of the retiree's last position or rank, is a policy which was in effect both at the time appellants were first hired as well as when the appellants retired. It was this long-established policy that was enforced by the requirement of filing the quarterly report form. It cannot be said that this requirement constitutes an adoption of a subsequent policy.

In the instant case, appellants are obligated to comply with the rules and regulations of the board. (§ 2-1712.) Such rules and regulations include the filing of the quarterly reports of income derived from gainful employment other than from service to the City of Fresno. Thus, the rights created in section 2-1735 are contingent upon the satisfaction of the earnings test requirements as set forth in section 2-1731, subdivision (c).

III. The withholding of benefits was not discriminatory because it failed to allow for promotional changes or the right to seek outside gainful employment.

Appellants contend the trial court erred in failing to determine the unlawfulness of withholding based on the discriminatory nature of not al-

lowing for promotional changes ("freezing") and not allowing for the right to seek outside gainful employment. Appellants complain that the respondent discriminates against the retiree on the basis that employees are allowed two kinds of opportunities to enhance their income, without any reduction whatsoever, i.e., "moonlighting," or working with pay off-duty, and promotions. It is claimed that this kind of conduct is simply discriminatory and that now the same pursuit of income enhancement deprives the retiree, through no fault of his own, of that enhancement.

Again, appellants offer no authority for this proposition. Appellants did not argue that the disparity was based upon an unconstitutional classification or upon any other constitutionally impermissible reason.

Article IV, section 16 of the California Constitution guarantees to every person that "[a]ll laws of a general nature shall have a uniform operation" and article I, section 7 provides that "[a] citizen or class of citizens, may not be granted privileges or immunities not granted on the same terms to all citizens" (formerly §§ 11 and 21 of art. I, respectively); the Fourteenth Amendment of the United States Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." ▮ This principle of "equal protection" preserved by both state and federal Constitutions, of course, "does not preclude the state from drawing any distinctions between different groups of individuals" (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983], cert. den. 403 U.S. 931 [29 L.Ed.2d 709, 91 S.Ct. 2249]) but it does require that, at a minimum, "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) The constitutional principle of equal protection does not preclude the state from drawing distinctions between different groups of individuals. However, a classification "'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251].)

▮ It appears abundantly clear that those retirees receiving an industrial disability allowance and active employees are not similarly situated. A disability retirement benefit is received if the disability is industrial, upon medical determination the individual is physically or mentally incapacitated for the performance of duty and ought to be retired. (§ 2-1729, subd. (a).) The retiree with an industrial disability receives a disability annuity which equals one-half of his average compensation currently received by an active employee of the same rank. (§ 2-1730, subd. (a).) This benefit is presum-

ably for the purpose of financially compensating the individual for loss of income due to his service-connected disability. The sole question is whether he is incapacitated for performance of duty as a fireman or policeman, as the case may be. This, in and of itself, is reasonable justification for the class to be singled out. Disabled persons are not similarly situated with those actively employed. There is no constitutional obligation to treat the two classes equally.

IV. The withholding of retirement benefits does not constitute an unlawful labor practice.

Appellants next contend that Labor Code section 216 prohibits the withholding of wages by an employer and that such withholding by respondent is in clear contravention to the state law which governs the City of Fresno as an employer.

Labor Code section 216 provides: "In addition to any other penalty imposed by this article, any person, or an agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who:

"(a) Having the ability to pay, wilfully refuses to pay wages due and payable after demand has been made.

"(b) Falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due."

Respondent counters that this section of state law does not apply, and no violation exists, where the person charged with failure to pay wages has valid offsets or counterclaims to such wages, citing *People* v. *Porter* (1930) 107 Cal.App.Supp. 782 [288 P. 22], an appellate department decision. Respondent asserts that section 2-1731, subdivision (c) provides a valid offset to certain benefits otherwise payable to pensioners of the system. However, this argument does not appear particularly helpful since a valid offset of a portion of wages would not justify withholding the entire sum.

On the other hand, it has been recognized that a dispute in good faith as to whether any wages were due would be a defense to an action for penalties pursuant to Labor Code section 216. (*In re Trombley* (1948) 31 Cal.2d 801, 808 [193 P.2d 734].) In the instant case, the facts do not indicate a *wilful* failure to pay wages due and payable, but merely a withholding of benefits until it can be determined the amount of benefits due and payable as provided by the retirement system. The established procedure for determining

the amount due and payable is the employee's submission for consideration of the quarterly report form in question.

Therefore, it does not appear that the conduct of respondent amounted to a violation of Labor Code section 216. (Code Civ. Proc., § 909.)[3] Furthermore, were the board to fail to enforce section 2-1731, subdivision (c), said failure would result in the distribution of retirement benefits in an amount in excess of the amounts to which the appellants are statutorily entitled. Excess payments would constitute an impermissible gift of public funds in violation of section 6 of article XVI (formerly § 6 of art. XIII) of the California Constitution. (See *Lamb* v. *Board of Peace Officers, etc.* (1938) 29 Cal.App.2d 348, 350 [84 P.2d 183].)

V. The conduct of the City of Fresno was lawful.

Appellants continue to argue that the conduct of the respondent in this matter is "inexcusably wrong." Appellants' position remains that their expectations, reinforced by the law, are that there is "no reduction, no audit, no reports, no withholdings, and no forfeiture to be suffered." Respondent then cites *Chula Vista Police Officers' Assn.* v. *Cole, supra,* 107 Cal.App.3d 242 and *Olson* v. *Cory, supra,* 27 Cal.3d 532, which were previously discussed.

Appellants make no specific allegations as to the manner in which respondent's conduct should be considered unlawful. It appears to be an effort to aggregate the foregoing arguments without offering any further points or authorities.

Respondent, in response, summarizes its argument. This nonissue deserves no further comment.

We hold the "earnings test" provided in section 2-1731, subdivision (c) is a valid term and condition for receiving industrial disability benefits in

---

[3]Section 909 of the Code of Civil Procedure reads as follows: "In all cases where trial by jury is not a matter of right or a trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

that it was originally established when the city created its pension system in 1955. The requirement of reporting outside income as a condition precedent to receiving said benefits appears to be a reasonable manner of enforcing the provisions of section 2-1731, subdivision (c). Therefore, the procedures and practices of the retirement board discussed herein are valid and lawful.

Affirmed.

Hanson (P. D.), Acting P. J., and Andreen, J., concurred.