Filed 5/10/21  In re I.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re I.S. et al., Persons Coming Under the Juvenile Court Law. | C091050 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. Nos. JD239028, JD239029) |
| Plaintiff and Respondent, | |
| v. | |
| R.S., | |
| Defendant and Appellant. | |

R.S., father of the minors (father), appeals from the juvenile court's order terminating his reunification services, returning the minors to the mother under a plan of family maintenance, and issuing a no-contact order between him and the minors.  (Welf.

& Inst. Code, §§ 366.21, 395.)[1] In light of the juvenile court's subsequent order terminating dependency jurisdiction, we find father's claim is moot and will therefore dismiss his appeal.

## FACTUAL AND PROCEDURAL SUMMARY

In May 2018, the two minors, I.S. (then age seven) and D.S. (then age nine), were ordered detained from their parents' care and custody pursuant to a dependency petition filed by the Sacramento County Department of Child, Family and Adult Services (Department). The petition alleged serious physical harm, failure to protect, and serious emotional damage due to physical abuse of the minors by father and an acrimonious custody battle between father and the mother resulting in allegations by both parents of physical abuse toward the minors by the other parent.[2] (§ 300, subds. (a), (b), & (c).) The court ordered reunification services and visitation for both parents. The minors were initially detained with their wrestling coach and his wife but were eventually moved to a confidential foster home.

On October 12, 2018, the juvenile court sustained the allegations in the petition, as amended, found the minors dependent children of the juvenile court, and ordered continued services and visitation for both parents.

In March 2019, the Department reported that the mother made significant progress in her case plan services. Her visitation with the minors, which had progressed to unsupervised, was positive and consistent. On the other hand, while father completed most of his case plan services, he did not demonstrate having benefited from those services. He continued to be manipulative and punitive with the minors to the point that the minors had begun refusing all interaction with father, and his therapist reported he did

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The Department reported the parents had a lengthy history with Child Protective Services (CPS) beginning in 2010.

2

not take responsibility for his abuse of the minors. Following the January 2019 progress hearing, the minors reported to their social workers and foster mother that they no longer wished to visit with father due to, among other things, the fact that father attempted to record them saying their foster parent hit them so he could "win the case." The minors stopped visiting father as of February 22, 2019, and they insisted their foster mother be present during telephone calls with father to "hear anything bad" and report it to the social worker.

In June 2019, the Department reported a disclosure by I.S. during an interview at the end of April that while the family was waiting in the lobby for a child and family team (CFT) meeting, father showed her a picture of himself sitting on a couch naked. Further investigation resulted in new disclosures by I.S. of father touching both minors on their "private parts" while they were in the shower and sleeping naked with the minors. The Department recommended, and subsequently filed a motion requesting, that visitation be suspended until a therapeutic assessment deemed resumption of visits to be in the minors' best interests.

In July 2019, the Department reported the results of father's psychological evaluation were consistent with the case history in that father continued to be unwilling to acknowledge any responsibility or fault regarding the sustained allegations of physical and emotional abuse of the minors. Due to, among other things, father's lack of insight regarding his own behavior, the Department reported it was unlikely father would ever acknowledge his part in the trauma experienced by the minors and for which they were receiving intensive, trauma-informed therapy.

At the conclusion of the August 5, 2019 contested review hearing, the court found the mother's progress in alleviating or mitigating the issues that led to removal of the minors was significant and father's progress was minimal. The court continued the minors in out-of-home placement, continued reunification services to both parents, and

3

temporarily suspended father's visitation noting, "visits with the father would cause detriment to [the minors'] emotional well-being."

The September 2019 permanency review report recommended continued out-of-home placement of the minors, continued reunification services for the mother, and termination of father's reunification services. The mother was in the process of finding suitable housing. She reportedly made significant progress in services, maintained consistent and positive visitation, and made significant progress in resolving the issues that led to the minors' removal. Father completed most of his case plan but did not demonstrate having benefited from those services. He refused to acknowledge his continued abusive behavior resulted in the minors' refusal to visit with him, and he refused to take responsibility for the abuse of the minors. Father had not made significant progress in addressing the concerns that brought the family to the attention of CPS and was unable to care for the physical and emotional needs of the minors. The Department's October 2019 addendum report reiterated those same concerns and recommendations.

Following a contested permanency hearing on November 13, 2019, the court found father had made no progress, had not done anything in terms of his case plan, and it appeared father had "given up on this process." The court further found there had been no change in the evidence of risk of returning the minors to father. The court terminated father's reunification services, returned the minors to the mother's care and custody with family maintenance services to the mother but not to father, and continued dependency supervision.

With regard to visitation, the court noted, "On the one hand, the Court would like the children to have a healthier relationship with their father. He is their father. He will always be their father, and while his case is before this Court to the extent that the Court can, the Court would like to move the needle in the direction so that they can begin to have a relationship which means begin to have visits." The court further noted, "On the other hand, the father, as I said, has done -- the father has to make an effort in order for

4

visits to take place and certainly for a relationship to be reestablished, and he hasn't made any efforts, as I said, since the [section 366.21, subdivision (e) hearing], and his efforts before that lacked like much." (*Sic*.) The court continued the no-contact/no visitation order until further order of the court, adding "but I want to set a progress report hearing -- I'm thinking in 90 days -- to learn how the children are doing in counseling and to consider whether or not conjoint counseling is possible or whether visiting with the father is possible."

Father filed a timely notice of appeal of the court's November 13, 2019 order.

On July 27, 2020, the juvenile court entered a custody order awarding full physical and legal custody of the minors to the mother, continuing the no-contact order between father and the minors, and terminating dependency jurisdiction. We grant the Department's request to take judicial notice of this order. (Evid. Code, §§ 452, subd. (d), 459.)

## DISCUSSION

Father contends the juvenile court's November 13, 2019 order prohibiting contact or visitation between father and the minors was an abuse of discretion. The Department argues father's appeal must be dismissed as moot in light of the juvenile court's order terminating dependency jurisdiction. Alternatively, the Department argues the court's order prohibiting visitation between father and the minors was proper. In response, father asserts the court's order terminating dependency jurisdiction is not a final order and, in any event, this court should reach the issue of visitation because the no-visitation order infected the outcome of any subsequent proceedings, including the July 27, 2020 hearing at which the court again denied father visitation.

The juvenile court terminated dependency jurisdiction on July 27, 2020. At that point, there was no ongoing dependency proceeding. No direct relief can be granted even were we to find reversible error. (*In re Michelle M.* (1992) 8 Cal.App.4th 326, 329-330.)

5

Father's remedy is to challenge the court's July 27, 2020 order terminating dependency jurisdiction.

Father argues the July 27, 2020 order is not final and, in any event, he speculates that the court's no-visitation order has infected the outcome of subsequent proceedings, including the July 27, 2020 hearing. He cites, without any analysis, two cases in support of his argument: *In re Dylan T.* (1998) 65 Cal.App.4th 765 (*Dylan T.*) and *In re A.R.* (2009) 170 Cal.App.4th 733 (*A.R.*). To the extent father failed to support his argument with analysis, his argument must be deemed forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in appellate brief must be supported by citation of authority]; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [lack of authority or analysis constitutes forfeiture].) In any event, the cases cited by father are inapposite.

The *Dylan T.* case did not involve a termination of dependency jurisdiction. Rather, the incarcerated mother challenged the juvenile court's order prohibiting contact with the minor solely due to the minor's tender age (under two years old). (*Dylan T., supra*, 65 Cal.App.4th at pp. 768-769.) The Court of Appeal held the purported error was not moot as a result of the mother's release to residential treatment finding that, due to the minor's young age, the lack of all opportunity for visitation during the 6-month reunification period was an error "which could infect the outcome of subsequent proceedings" by creating a possibility of future prejudice to the mother's reunification rights. (*Id.* at p. 770.) Here, unlike *Dylan T.*, father was no longer in the reunification period and, after nearly 18 months, his services were terminated due to his lack of progress or benefit from those services, his refusal to acknowledge his continued abusive behavior toward the minors, and his unrelenting denial of responsibility for the abuse of the minors. The no-contact/no-visitation order was based not only on father's minimal progress and lack of acknowledgement of responsibility, but also on his concerning behaviors during visits and during telephone calls and on the minors' clear statements of

6

their fear of father's reaction to them and their desire to have no further contact with him. *Dylan T.* is distinguishable.

In *A.R.*, the father appealed from the juvenile court's denial of his request to stay the proceedings pursuant to the Servicemembers Civil Relief Act (SCRA) (50 U.S.C. Appen. §§ 501-596) and its decision to proceed with the contested jurisdictional hearing where the court denied his counsel's request for a continuance while he was on active duty in Iraq. (*A.R., supra*, 170 Cal.App.4th at pp. 736, 739.) The agency requested that the court find father's appeal moot due to the court's subsequent order awarding custody of the minor to the mother and terminating dependency jurisdiction. (*Id.* at pp. 739-740.) The appellate court denied the request without further comment or analysis, deciding the case on the merits. (*Ibid.*) Unlike *A.R.*, application of the SCRA is not at issue in this case. More importantly, the *A.R.* decision provides no guidance on the mootness issue. *A.R.* is therefore inapposite.

Father's claim that the no-visitation order will jeopardize his interests in any subsequent proceedings in family court does not defeat a finding of mootness. All juvenile court exit orders "shall continue until modified or terminated by a subsequent order of the superior court." (§ 362.4, subd. (b).) Thus, like any other party who goes to family court requesting that the juvenile court's visitation orders be modified or terminated, father must show that the change he seeks is supported by a significant change of circumstances and that the new order would be in the child's best interests. (§ 302, subd. (d).) The fact that the serious and difficult circumstances underlying the juvenile court's issuance of the no-visitation order would likely require father to demonstrate a concerted and drastic change in his own behavior in order to prevail does not render the order prejudicial.

# DISPOSITION

The appeal is dismissed as moot.

                                 /s/
                              RAYE, P. J.

We concur:

    /s/
HULL, J.

    /s/
MAURO, J.