Filed 4/2/25  In re J.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | C100564 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. 53005496) |
| Plaintiff and Respondent, | |
| v. | |
| A.B., | |
| Defendant and Appellant. | |

Appellant A.B., mother of the minor J.B., appeals from the juvenile court's dispositional orders.  (Welf. & Inst. Code, §§ 361.2, 395.)[1]  Mother contends there was

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

insufficient evidence to support the juvenile court's finding that placement of the minor with mother would result in substantial risk of detriment to his physical or emotional well-being. We disagree and will affirm the juvenile court's orders.

BACKGROUND

The then-12-year-old minor and his family came to the attention of the Placer County Department of Health and Human Services (Department) in September 2023 when law enforcement executed a search warrant at the home where the minor lived with his father and his paternal great-uncle Jason. The search revealed child pornography and drug paraphernalia that was accessible to the minor, and the minor told law enforcement that father used illegal substances. Father was arrested and the minor was taken into protective custody. The extent of Jason's involvement was also being investigated.

In October 2023, the Department filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b), (c), and (g). Mother was named only in the section 300, subdivision (b) allegation. The Department reported the minor had been removed from mother in September 2012 due to mother's substance abuse and mental health issues and was ultimately placed with father, who was awarded sole legal and physical custody. Mother had supervised visitation rights. The minor told the social worker that mother was homeless and had not visited for several months. He also stated she was pregnant and had a boyfriend, Ethan, who was abusive to her.

Mother wanted the minor to live with her or, alternatively, with the maternal grandmother. However, due to mother's child welfare history, the Department could not place the minor with her without further assessment. When asked the specific reason for the minor's removal from her care, she did not answer, stating only that she lost custody due to false reports made against her.

On October 3, 2023, the juvenile court ordered the minor detained with twice weekly supervised visitation between the minor and each of his parents.

2

According to the December 2023 jurisdiction/disposition report, the minor told the social worker that mother had mental health issues that caused her to behave in an unsafe manner, and that she had a mental breakdown after learning father had cheated on her. The minor only saw mother about once a year, and she had not visited in some time due to her pregnancy, which she was attempting to hide from father. The minor did not want to stay with mother as he felt she was overprotective and was trying to separate him from father, with whom he wanted to live. Father confirmed that mother seldom visited the minor and did not have much of a relationship with him. When mother did visit the minor, her boyfriend Ethan had inappropriate conversations with and made inappropriate comments to the minor, which mother was unable to recognize or acknowledge when pointed out. The Department wanted to provide mother with services to address those and any other concerns prior to any possible return of the minor to mother's custody. However, the social worker's multiple attempts to meet with and interview mother to obtain necessary information were thwarted by mother's unavailability and failure to participate. Due to mother's child welfare history, her minimal contact with the minor despite ample opportunity, and her current lack of availability, the Department recommended that mother not be considered for placement.

The Department's January 2024 report stated mother was not making herself available to the social worker despite requesting placement of the minor. She was inconsistent with scheduled visits, either failing to confirm the visit or not showing up at all. Although mother presented well when she participated in video visits with the minor, her boyfriend Ethan, who was also present, appeared to be intoxicated. Mother continuously tried to persuade the minor to live with the maternal grandmother despite the minor telling her he did not want to and would be uncomfortable doing so. Mother attended a November 2023 in-person visit with the maternal grandmother, who sat quietly, and Ethan, who appeared intoxicated and made inappropriate comments about father being a pedophile. Mother was eventually notified that she could not bring Ethan

3

to future visits due to his apparent intoxication and his inappropriate behavior. Although mother's interaction with the minor was reportedly positive, the minor referred to her by her first name and kept her at a distance during video calls.

Mother reported she was living at a shelter for unhoused families but was moving into an apartment in several weeks and would be living with her daughter and Ethan, to whom she was now engaged. The apartment would also accommodate the minor. Mother reported that Ethan had struggled with alcohol in the past but was working on his sobriety, attending AA meetings daily. She denied using alcohol or drugs herself except for marijuana, which she used for anxiety and to sleep. She reported having received mental health treatment and medication for her bipolar diagnosis for the past 10 years and participating in counseling for new mothers of infants and children under three for the past three months. She planned to find a parenting program to address parenting older children (like the minor).

Mother reported she last saw the minor in July 2023 and blamed father for interfering with her attempts to see the minor. She claimed some of the missed visits could be attributed to the minor mixing up dates and times. The Department recommended that mother continue to engage in services and requested that the juvenile court dismiss the section 300, subdivision (b) allegation against her, sustain the petition as amended, adjudge the minor a dependent of the court, and find that placement with mother would be detrimental to the safety and well-being of the minor.

The contested jurisdiction/disposition hearing commenced on January 5, 2024. Mother was not present but was represented by counsel. The juvenile court granted the Department's motion to dismiss the section 300, subdivision (b) allegation as to mother (leaving her unnamed in the petition) and sustained the petition as amended. Regarding disposition, the court admitted, without objection, mother's declaration in lieu of her testimony, as well as a memorandum from the County of San Mateo regarding mother's behavioral health and recovery services. Mother's declaration stated among other things

4

that: she was living in a family shelter but was in the process of obtaining a two-bedroom apartment; her boyfriend Ethan had a drinking problem but had been in treatment for four weeks, did not drink around her children, and did not currently live with her; Ethan had never been violent towards her; she experienced financial hardship which impacted her ability to visit the minor in person; she knew smoking in the home was unsafe for the minor and therefore no longer allowed smoking in the home; she was unaware of the substance abuse and "other issue" occurring in father's home leading to the minor's removal; she received treatment for her bipolar diagnosis for the past 10 years; and she did not pose a safety risk to the minor.

Mother's counsel argued that mother, as the (now) nonoffending, noncustodial parent, was seeking placement of the minor pursuant to section 361.2, subdivision (a), noting mother had found appropriate housing, was addressing her mental health needs, had not had any additional contacts with law enforcement, and had maintained contact with the minor over the years prior to his detention. Counsel argued that the minor's preference not to live with mother was outweighed by the long-term benefits he would gain from becoming an integrated member of a family.

The Department argued that, since mother lost custody of the minor in 2013, she had been largely absent from the minor's life except for sporadic visits. Since September 2023, the minor had not seen mother in nine months. As a result of mother's absence in his life, the two did not share a strong bond. The Department expressed concern about mother's inability or unwillingness to protect the minor from Ethan's alcohol abuse or his inappropriate conduct during her visits with the minor, noting that she planned to live with Ethan in the near future. For those reasons, the Department argued it would be detrimental to place the minor with mother. Father joined in the Department's arguments, emphasizing mother's poor judgment in allowing Ethan to be intoxicated during visits with the minor.

5

The minor also joined in the Department's arguments and added that, given the lack of relationship between the minor and mother, the minor's age, and the minor's stated feelings towards his mother, it would be detrimental to force the minor to live with a parent "who he does not know very well or feel comfortable with," particularly when it was unknown how much contact the minor would have with Ethan.

The juvenile court found placement of the minor with mother would be detrimental to his safety, protection, or physical or emotional well-being. The court ordered the minor removed from father and continued in out-of-home placement, with reunification services and visitation for both parents.

Mother filed a timely notice of appeal of the juvenile court's January 5, 2024, orders.

DISCUSSION

Mother contends the disposition order is not supported by sufficient evidence that placing the minor with her would be detrimental to the minor's safety, protection or physical or emotional well-being. We disagree.

Section 361.2 establishes that, where a noncustodial parent requests custody of a minor following removal from the custodial parent pursuant to section 361, " 'the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child' (§ 361.2, subd. (a))." (*In re Z.K.* (2011) 201 Cal.App.4th 51, 70.) "The juvenile court must make the detriment finding by clear and convincing evidence." (*Ibid*.) "[I]t is the party opposing placement who has the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody." (*Ibid*.)

When reviewing a juvenile court's placement order, we review the record in the light most favorable to the juvenile court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence

6

that the minor would suffer detriment. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426; see also *In re A.C.* (2020) 54 Cal.App.5th 38, 43.)

Here, there was substantial evidence to support the juvenile court's detriment finding. The minor stated he barely knew his mother and did not want to live with her. He had not lived with her for over a decade--since he was a toddler. Despite having visitation rights, mother made little effort to maintain consistent contact with, or develop a relationship with, the minor. The dependency petition was filed in October 2023. The minor's previous contact with mother before the petition's filing was in January 2022-- nine months prior. After November 2023, she did not visit him for some time in an effort to hide her pregnancy from father. When mother did visit, she brought her boyfriend Ethan who acted inappropriately and appeared to be intoxicated, and whom the minor reported had perpetrated domestic violence against mother. Mother was unable to either recognize or acknowledge Ethan's condition or inappropriate behavior and its negative effect on the minor, requiring staff to intervene. The social worker testified that, although the Department was prepared to offer mother services to address those issues, mother did not take full advantage of the offer of assistance.

As the juvenile court stated in making its detriment finding, it considered the 13-year-old minor's clear expression of his wish not to be placed with mother, mother's inconsistent visitation, her lack of contact, and her inability to protect the minor during visits attended by Ethan, who acted inappropriately and was under the influence during visits and was capable of domestic violence. The court also noted the emotional toll it would take on the minor to uproot him from his current placement and move him hours away from his support system.

Mother claims it was improper for the juvenile court to base its detriment finding in part on the inconsistency of her visitation. She argues, without citation to relevant authority, that because a lack of relationship between the parent and child is insufficient

7

*in and of itself* to support a detriment finding, "it follows that a failure to consistently visit . . . is not a proper basis for a detriment finding."

Initially, mother's failure to cite authority on the specific issue or the conclusion drawn forfeits the claim. (*People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647.) Further, as the Department notes, evidence regarding a parent's unlikelihood of pursuing necessary reunification steps such as visitation *is* relevant to a finding of detriment. (See *In re Joseph B.* (1996) 42 Cal.App.4th 890, 901-902.) Finally, the juvenile court did not base its detriment finding on visitation alone or on *any* single factor, but rather a number of factors which, taken together, provided sufficient evidence that placement of the minor with mother would be detrimental to the minor's safety, protection, or physical or emotional well-being. (§ 361.2, subd. (a).)

Mother claims there was insufficient evidence supporting the court's determination that moving the minor to another county to live with mother against his wishes would cause him to suffer emotional harm for purposes of a detriment finding. She adds there was insufficient evidence that she was unable to adequately protect the minor from Ethan during visitation. First, while none of these factors alone were sufficient to find detriment, each was properly considered together with the other factors, as discussed above. (See *In re Joseph B.*, *supra,* 42 Cal.App.4th at pp. 901-902 [court may consider social worker's testimony on adverse effect of return on minor]; *Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 70-705 [court may consider mother's relationship with person "whose presence will be detrimental to the [minor]"]; *In re Adam H.* (2019) 43 Cal.App.5th 27, 35 [minor's wishes for placement, although not the deciding factor, may be considered for purposes of finding detriment]; *In re A.C.*, *supr*a, 54 Cal.App.5th at p. 43 [minor's wishes, while not dispositive, are relevant].)

Second, the record contained sufficient evidence to support these findings. The minor stated mother rarely contacted or visited him. When she did, he referred to her by

her first name and was hesitant to warm up to her. The minor had no significant relationship with mother and he did not want to live with her. The Department's reports and the social worker's testimony were evidence that it would be detrimental to force the minor to live with a parent he neither knew well nor felt comfortable with. There was also evidence that moving to another county and away from his family, friends, and support system could cause emotional harm, particularly because the minor would be leaving the only place he had ever known and moving into a home where, according to mother, he would presumably have regular contact with Ethan, who would also be living there and would be, at best, in recovery. Further, it was clear that mother was either unable or unwilling to protect the minor when she brought an intoxicated Ethan to more than one visit, and she was unable or unwilling to intervene when Ethan was inappropriate during those visits.

Lastly, although she acknowledges section 361.2 does not require the Department or the juvenile court to consider alternatives when denying placement to a noncustodial parent, mother nonetheless argues any concerns about Ethan could have been ameliorated by placing conditions on the minor's placement with mother as required by section 361, subdivision (d), which provides that a child shall not be removed unless "no reasonable means by which the child's physical and emotional health can be protected without removing the child" from the parent's custody. However, section 361, subdivision (d) applies only when the child is removed from the parent "with whom the child did not reside at the time the petition was initiated." Here, the minor was removed from *father*, the custodial parent, not from mother, the noncustodial parent. Thus section 361, subdivision (d), is inapposite.

On this record, there was sufficient evidence to support the juvenile court's finding that placing the minor with mother would be detrimental to the minor's safety, protection or physical or emotional well-being. In light of our conclusion, we need not address mother's remaining arguments.

9

DISPOSITION

The juvenile court's judgment is affirmed.


                                            /s/
                                        Duarte, J.



We concur:




      /s/
Earl, P. J.




      /s/
Mesiwala, J.

10