Filed 11/22/23  In re N.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re N.B., a Person Coming Under the Juvenile Court Law. | C098565 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.B. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. JD241625) |

Appellants C.B. (mother) and C.G. (father), parents of the minor, appeal from the juvenile court's order terminating parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.36, 395.)[1]  The parents contend the juvenile court erred

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

when it determined neither the beneficial parental relationship exception to adoption nor the sibling relationship exception to adoption applied and terminated parental rights. The parents also contend the juvenile court and the Sacramento County Department of Child, Family and Adult Services (Department) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) because the Department did not inquire of the minor's maternal or paternal relatives.

Although the record does not affirmatively show error by the juvenile court, or even error by the Department, it also does not detail the manner in which the Department complied with its duty of inquiry under the ICWA. We would generally presume the Department performed its duties; however, here the Department concedes the ICWA error without explanation. Consequently, we will conditionally affirm and remand for limited ICWA proceedings.

## I. BACKGROUND

In October 2021, the Department filed a dependency petition pursuant to section 300, subdivision (b), alleging the parents' failure to protect the three-month-old minor due to mother's untreated substance abuse issues which, among other things, caused mother and the minor to test positive for various substances at the minor's birth. Prior to the filing of the petition, mother had been provided with informal supervision services, including substance abuse assessment, testing, and treatment. However, she either minimally engaged in or failed to comply with those services, presented numerous positive tests for alcohol, methamphetamine, cocaine, and THC, and at times failed or refused to test altogether. She was also offered residential substance abuse treatment, which she also refused.

2

The minor was placed in a confidential foster home after being released from the hospital. The Department recommended the minor and her 11-year-old sibling, A.G.,[2] be detained out of the parents' home due to the minor's tender age, mother's ongoing untreated substance abuse, and father's status as a Penal Code section 290 registrant. The maternal grandparents reportedly also lived with mother and the minor and had their own "concerning child welfare history" and substance abuse issues in the home.

At the initial hearing on October 26, 2021, the court ordered paternity testing for father and conducted ICWA inquiry. Parentage was still pending at the continued hearing on November 2, 2021, when the court ordered the minor detained but allowed sibling A.G. to remain in mother's custody pending jurisdiction and disposition. The court conducted ICWA inquiry again and ordered the parents to provide the Department with information regarding any known maternal or paternal relatives for purposes of possible placement. The court eventually found father to be the biological father of the minor.

In its December 2021 jurisdiction/disposition report, the Department recommended the court sustain the petition, expressing its concern that mother's ongoing and untreated substance abuse and her refusal to admit having a problem, as well as father's status as a Penal Code section 290 registrant and his failure to make himself available for assessment and services, placed the minor at risk of substantial harm. The Department also recommended the court bypass father for services, reporting that, on December 3, 2021, father informed the Department he no longer wanted to be involved in the dependency proceedings. Although mother had either failed to test or tested positive for drugs and alcohol 13 times since August 31, 2021, and failed or refused to comply with drug testing and treatment, the Department recommended that mother continue with

---

[2] A.G. is not a party to these proceedings and will be mentioned only when relevant to the issues on appeal.

3

reunification services, including counseling, and parenting education, as well as substance abuse assessment, testing, and treatment.

On January 28, 2022, the court exercised jurisdiction over the minor, ordered the minor to remain in out-of-home placement, and ordered mother to participate in drug court.

In April 2022, the minor's sibling was removed from mother's custody due to mother's continuing substance abuse. However, the sibling was returned to mother's care shortly thereafter and mother was provided with family maintenance services. Mother began outpatient substance abuse treatment in April 2022, but was discharged the following month due to excessive absences. She was referred back into outpatient treatment but had yet to contact the provider, and she declined to enter residential treatment as recommended. Mother continued to minimize her substance abuse and often did not follow through with recommendations from her support team. She either tested positive for alcohol and drugs or failed to test throughout March, April, May, and June 2022, with the exception of several occasions when she admitted having used marijuana. She continued to be noncompliant with treatment from August 2022 to October 2022.

For a period of time, mother's visitation with the minor was sporadic, something which "heavily impacted" the minor. Visits were reduced from four to two hours per week due to mother's inconsistent attendance. Thereafter, she began to improve and maintain a fairly routine visitation schedule. However, her visitation had not progressed to a less restrictive arrangement due to the risks associated with mother's continued substance abuse.

The Department reported that the minor had developed a strong attachment to her caregivers and was doing well. She sought her caregivers out for attention and affection and was "easily soothed in their presence." While the minor had some issues with sleep and temper tantrums, she improved after her sleep schedule was adjusted.

The Department recommended the court terminate mother's reunification services due to her lack of engagement in services and treatment, her inconsistent and sporadic contact with service providers and the social worker, her continued use of substances, her need for a higher level of intervention, and the minor's tender age.

On January 3, 2023, the court denied the maternal grandparents' request that the minor be placed with them, terminated mother's reunification services, and set the matter for a section 366.26 hearing.

In its April 2023 selection and implementation report, the Department recommended the court terminate parental rights. Although mother had improved her consistency with respect to visitation, the Department noted that there "continue[d] to be a lack of a parent/child relationship between the [minor] and the mother, as [the minor] spen[t] a significant amount of time in out-of-home placement with her current caretakers." It was also noted that, while the minor undoubtedly enjoyed visits with mother, there was no evidence of a strong bond between mother and the minor such that it would be beneficial for the minor to maintain the parent-child relationship.

At the May 10, 2023, contested selection and implementation hearing, mother testified she visited the minor every other Sunday for two hours and that the maternal grandparents and the minor's sibling accompanied her for half of those visits. She testified the minor recognized her, as demonstrated by the smile on the minor's face, and called her "Mama." Mother testified she brought snacks and toys to the visits and played on the floor with the minor, and that she brought diapers, clothes, and skin care products and changed the minor's diaper when necessary. Mother testified that, when the minor became fussy, mother held her and talked calmly to her. At the end of the visits, mother carried the minor out to the vehicle, strapped her down in her car seat, and kissed her goodbye. Sometimes, the minor looked disappointed and there were "a couple times" the minor cried when she and mother separated. Mother testified that, at the end of the most

5

recent visit, the minor would not let go of her. On cross-examination, mother acknowledged the minor had never lived in her care.

In closing argument, mother objected to termination of her parental rights and argued the beneficial parental relationship exception to adoption applied. She argued she consistently visited the minor, she was very sensitive to all of the minor's needs during visits, and the minor enjoyed visiting her and the other relatives. Mother claimed she had "shown that she ha[d] been interested in attending doctors' appointments," and she had done "whatever she c[ould] do as a parent for her daughter given the situation." The Department countered that the nearly two-year-old minor had spent her entire life outside mother's care and had only ever seen mother during supervised visits. The Department argued there was no evidence to demonstrate the benefit of a permanent home was outweighed by any harm to the minor if parental rights were terminated.

The court found that, while mother had visited consistently, she had not met her burden to establish that the minor's relationship with mother was so positive that termination of parental rights would be harmful to the minor. Adopting the Department's recommended findings and orders, the court terminated parental rights and declared adoption as the appropriate permanent plan for the minor.

## II. DISCUSSION

*A.      Termination of Parental Rights*

The parents contend the juvenile court erred in terminating their parental rights by failing to find the beneficial parental relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) applied and by failing to apply the sibling relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(v)). As we explain, the claims were either forfeited by the parents or lack merit.

*1.      Beneficial Parental Relationship Exception*

At a section 366.26 hearing, the juvenile court "shall terminate parental rights and order the child placed for adoption" if it finds "by a clear and convincing standard, that it

6

is likely the child will be adopted." (§ 366.26, subd. (c)(1).) Juvenile courts should decline terminating parental rights only in " 'exceptional circumstances' " where the parent "can establish termination would be detrimental to the child under one of the statutory exceptions." (*In re D.P.* (2022) 76 Cal.App.5th 153, 163.) One such exception is the beneficial parental relationship exception, which applies when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) "[T]he parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*).) There are three elements to establish this exception: "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Id*. at p. 631, italics omitted.)

We apply a mixed standard of review: " '[A] substantial evidence standard of review applies to the first two elements' and the third element, given it is a hybrid of factual determinations and discretionary balancing, is 'properly reviewed for abuse of discretion.' [Citation.] 'But where, as with the parental-benefit exception, "the appellate court will be evaluating the factual basis for an exercise of discretion, there likely will be no practical difference in application of the two standards." ' " (*In re D.P., supra*, 76 Cal.App.5th at p. 165, italics omitted.)

We first reject the parents' claim that the juvenile court failed to properly analyze the applicability of the beneficial parental relationship exception under *Caden C.* Where, as here, the parents proffer their claim without providing any analysis or citations to the record, the claim is forfeited. (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [lack of authority or analysis constitutes forfeiture].) In any event, the claim lacks merit. The only evidence the parents offered to support their claim was mother's testimony. After considering that testimony, together with the Department's reports and the

7

arguments of the parties, the court specifically referenced *Caden C.* and applied the elements required for applicability of the exception stating that, while mother demonstrated consistent visitation, she failed to establish her substantial positive relationship with the minor "such that it would be so harmful to [the minor] that she should have a permanent plan of legal guardianship" rather than termination of parental rights.

Next, we reject the parents' claim that the juvenile court erred in failing to find the beneficial parental relationship exception to adoption applied. As to the first element in *Caden C.*, it is undisputed that mother eventually maintained consistent visitation with the minor, albeit supervised. Regarding the second element, the parents claim mother was not a mere "friendly visitor," but rather she had a substantial, positive emotional attachment with the minor as evidenced by the minor interacting with mother during visits, recognizing mother, being affectionate towards her and calling her "Mama," playing on the floor with her, being soothed by her, and sometimes looking disappointed or crying at the end of visits. The Department's reports showed, and mother confirmed on cross-examination, that the then 22-month-old minor had been in out-of-home placement since birth and had never lived with mother. While the minor reportedly enjoyed visits with mother and was affectionate with her, the minor had little trouble parting with mother after visits other than the occasional tears. According to the caretaker, the minor had no change in behavior or mood before or after visits with mother or her other relatives. Other than mother's own testimony, there is little evidence to establish mother and the minor had a substantial, positive relationship, and no evidence that the minor missed mother between visits or asked for mother when not with her.

As to the third element of *Caden C.*, mother failed to present any evidence that termination of parental rights would be detrimental to the minor other than her testimony that *she (mother)* would be "torn completely apart" if the relationship were terminated. But it was evidence of detriment *to the minor* that mother needed to establish. She did

not.  To the contrary, as discussed above, the minor had been in out-of-home placement since birth and her only contact with mother was during visits.  The minor was doing well in her placement and had established a bond with her caretakers.

The parents claim that, while they did not request a bonding study, the juvenile court should have ordered one sua sponte in order to provide the family with "a *Caden C.* compliant hearing."  But, the juvenile court has no sua sponte duty to order a bonding study.  (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339-1340.)  Nor does the Department have a duty to produce evidence relevant to the exception beyond what the statutes specifically require to be included in its report.  (*Id.* at pp. 1343-1344.)  The party arguing that the beneficial parental relationship exception applies bears the burden of producing evidence that establishes the exception.  (*Id.* at p. 1339.)  Neither statutory nor case law requires a bonding study as a condition precedent to terminating parental rights.  (*Ibid.*)  While *Caden C.* noted that trial courts should "seriously consider, *where requested* and appropriate, allowing for a bonding study or other relevant expert testimony" (*Caden C., supra*, 11 Cal.5th at p. 633, fn. 4, italics added), it does not stand for the proposition that a trial court errs where it does not sua sponte order a bonding study.

There was sufficient evidence to support the juvenile court's finding that the beneficial parental relationship exception to adoption did not apply.

### 2.    *Sibling Relationship Exception*

The parents contend the juvenile court erred by not applying the sibling relationship exception to adoption.  The parents forfeited the claim by failing to raise it in the juvenile court.

As previously discussed, there are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child."  (§ 366.26, subd. (c)(1)(B).)  One such circumstance is when termination of parental rights would result in "substantial interference with a child's

9

sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."  (§ 366.26, subd. (c)(1)(B)(v).)  There is a "heavy burden" on the party opposing adoption under the sibling exception.  (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.)  "To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child."  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.)

Here, it was the parents' duty at the hearing to establish the exceptional circumstances justifying the sibling relationship exception.  They did not raise the exception, nor did they offer evidence in support of the exception.  The juvenile court has no sua sponte duty to determine whether an exception to adoption applies.  (*In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.)  Rather, the parents have the burden of proving an exception applies.  (*In re Rachel M., supra*, at p. 1295; *In re Melvin A., supra*, at p. 1252; *In re C.F.* (2011) 193 Cal.App.4th 549, 553.)  Failure to raise the exception at the hearing not only deprives "the juvenile court of the ability to evaluate the critical facts and make the necessary findings, but it also deprives this court of a sufficient factual record from which to conclude whether the trial court's determination is supported by substantial evidence." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 403; see *In re Daisy D.* (2006) 144 Cal.App.4th 287, 291-292; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)  Since neither the parents nor their counsel mentioned or argued for application of the statutory exception to

adoption at any time, we conclude the issue was not raised in the juvenile court. Failure to do so forfeits the issue on appeal. (*In re Erik P., supra*, at p. 403.)

Even assuming we could infer from the record that the parents raised the issue, they nonetheless forfeited the claim due to their failure to provide any analysis or citation to the record in their appellate briefing. (*Atchley v. City of Fresno, supra*, 151 Cal.App.3d at p. 647 [lack of authority or analysis constitutes forfeiture].)

B.      ICWA

Finally, the parents contend the Department failed to make sufficient ICWA inquiry of the maternal and paternal extended relatives, despite the fact that both parents denied Indian heritage. From our review of the record, it appears that the juvenile court comported itself in a manner consistent with its duties under the ICWA. However, the record before us does not detail the manner in which the Department complied with its duty of inquiry under the ICWA, if at all. The Department concedes its own error without explanation. Accordingly, we accept the Department's concession as to its own inadequate inquiry and remand for further ICWA proceedings.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a);

11

§ 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the [Department's] initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to believe' the child is an Indian child, then the [Department] 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id.*, subd. (e) . . . .)  Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply.  (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)"  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052, italics omitted.)

Here, the parents repeatedly denied having any Native American heritage.  At the detention hearing on October 26, 2021, in response to the court's inquiry, the parents again denied Indian heritage.  The court found there was no reason to know or believe the minor was an Indian child within the meaning of the ICWA and stated no further inquiry was required in the absence of new information.  Although we were not provided with the transcript of the detention hearing, the minute order from that hearing reflects that the court instructed the parents to inform the court if they received any subsequent information providing a reason to know the minor was an Indian child.  Those findings and instructions were reiterated by the court at the continued hearing on November 2, 2021.  The court made no ICWA findings thereafter.

The December 2021 jurisdiction/disposition report stated the ICWA does not apply, citing the parents' respective denials of Indian heritage. Thereafter, and throughout the remainder of the proceedings, the Department continued to report that the ICWA does not apply. Although the Department was in direct contact with the maternal grandparents and had an opportunity to inquire about the minor's ancestry, the record does not reflect that such an inquiry occurred. Similarly, during father's interview with the social worker, he provided the name of the paternal great-aunt. The record contains no evidence of inquiry of that individual.

Because additional inquiry should have been made with the parents' known relatives (see § 224.2, subd. (b); see also *In re Y.W.* (2021) 70 Cal.App.5th 542, 554; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1016-1018) and the Department has conceded without explanation that it did not properly perform its duties in that regard, we will remand the matter for further proceedings to address compliance with the inquiry and notice provisions of ICWA and entry of new findings regarding the applicability of ICWA.

The juvenile court is directed to inquire of the Department as to the manner and extent of its compliance with the inquiry and notice provisions of the ICWA, such that the record adequately reflects the Department's efforts in that regard on remand, and to enter new orders regarding the applicability of the ICWA.

### III.  DISPOSITION

The orders terminating parental rights are conditionally affirmed, subject only to full compliance with the ICWA as described by this opinion.  If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing.  (25 U.S.C. § 1914; § 224, subd. (e).)  On remand, the parents shall have counsel reappointed and be provided due process, including notice and the right to be heard for all ICWA compliance proceedings.


/S/

_____
RENNER, J.



We concur:


/S/

_____
DUARTE, Acting P. J.


/S/

_____
KRAUSE, J.


14