Filed 6/27/25  In re R.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re R.C., A Person Coming Under the Juvenile Court Law. | C101647 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20200000422) |
| Plaintiff and Respondent, | |
| v. | |
| M.C., | |
| Defendant and Appellant. | |

Appellant M.C. (mother), mother of minor R.C., contends respondent San Joaquin County Human Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law to determine whether R.C. has potential Native American heritage.  This court has twice set aside the juvenile court's ICWA findings regarding R.C. and ordered further ICWA review.  (See *M.C. v. Superior Court* (Feb. 7, 2023, C096846) [nonpub. opn.] [peremptory writ ordering additional ICWA inquiry and

1

findings before setting a Welfare and Institutions Code,[1] § 366.36 hearing for R.C.]; *In re R.C.* (Apr. 26, 2024, C099083) [nonpub. opn.] [conditional affirmance of parental rights termination order with remand for full ICWA compliance].)[2]

In *In re R.C.*, we conditionally affirmed an order terminating parental rights to R.C. but remanded for additional ICWA inquiry with extended relatives. Following remand and additional ICWA inquiries, the juvenile court again found the ICWA did not apply to R.C. and reaffirmed its previous order terminating parental rights. Mother challenges this order on appeal. She argues that the Agency's ICWA inquiry was insufficient. Although the record shows the challenged order did not address R.C.'s minor siblings, A.C. and S.C. (who are also subject to the juvenile court's dependency jurisdiction), mother also contends we should remand unidentified matters related to them back to the juvenile court. The Agency counters that it satisfied its ICWA duty as directed in *In re R.C.*

Addressing only the appealed order that is before us, we conclude sufficient evidence supports the juvenile court's finding that the ICWA does not apply to R.C. We affirm the juvenile court's order reaffirming the termination of parental rights as to R.C. We express no opinion on issues related to A.C. and S.C. that are not properly before us in this appeal.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

[2] For similar reasons, this court granted mother's separate petition for a peremptory writ of mandate to vacate the juvenile court's order setting a section 366.26 hearing as to A.C. and remanded for further ICWA review. (See *M.C. v. Superior Court* (Mar. 5, 2023, C099444) [nonpub. opn.].) We grant mother's request to take judicial notice of our prior decisions in cases Nos. C099444 and C099083. (Evid. Code, §§ 452, subd. (d), 453.) On our own motion, we take judicial notice of our prior decision in case No. C096846. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

## FACTUAL AND PROCEDURAL BACKGROUND

The following factual summary is taken from our prior opinion in *In re R.C.*, *supra*, C099083. Where relevant, we have supplemented with facts that occurred after we issued our opinion.

In 2014, the Los Angeles Juvenile Court sustained a section 300 petition filed on behalf of minor siblings R.C., A.C., and S.C. (collectively, the children) as well as their maternal half-brother (who is no longer a minor), based on drug use by the children's presumed father. (*In re R.C.*, *supra*, C099083.) The same court later sustained a subsequent petition based on mother's substance abuse. (*Ibid.*)

Based on ICWA notifications the Los Angeles Juvenile Court apparently received from mother and father, that court found that the ICWA did not apply in February 2014. (*In re R.C.*, *supra*, C099083.) Mother had reported being born in Los Angeles and her own mother (maternal grandmother) died when she was four years old. She did not know the identity of her father (maternal grandfather) and had no siblings. (*Ibid.*) Mother was raised by her grandmother (maternal great-grandmother) and was of Mexican descent on her mother's side. (*Ibid.*) Father reported that he was born in Sacramento and had 12 siblings. (*Ibid.*) His unmarried parents were still alive, although he had poor relationships with both. (*Ibid.*) Father was not close to any of his siblings and kept in contact with only a few of them. (*Ibid.*) After his mother (paternal grandmother) lost custody of him as a child, he lived with various relatives until moving in with his father (paternal grandfather) around age 13. (*Ibid.*)

Although several dependency reports referenced various extended relatives, including a paternal aunt Maria M. with whom the children were eventually placed for approximately four years, and two maternal adult half-siblings, it does not appear that the Los Angeles social services agency attempted to inquire of these relatives whether R.C. had any Native American ancestry. (*In re R.C.*, *supra*, C099083.)

The dependency matter was transferred to San Joaquin County in October 2020. (*In re R.C.*, *supra*, C099083.) Following transfer, the Agency prepared several reports citing the Los Angeles Juvenile Court's prior finding that the ICWA did not apply. (*Ibid.*) The children were eventually removed from paternal aunt Maria M.'s home, and R.C. was placed in a foster home separate from his sisters, A.C. and S.C. (*Ibid.*)

At a hearing that occurred while mother's writ petition was pending in case No. C096846 (in which she challenged the order setting the section 366.26 hearing for R.C.), the juvenile court asked mother and father about their potential Native American heritage. (*In re R.C.*, *supra*, C099083.) Father said he did not have any Indian ancestry, and mother said the same about her maternal side, but informed the court she had no information regarding her paternal side because she did not know the identity of her father, who was not listed on her birth certificate. (*Ibid.*) Based on the parties' representations at the hearing, the juvenile court initially found the ICWA did not apply, although it noted the ICWA finding could be vacated and continued the matter for further ICWA inquiry as to mother. (*Ibid.*)

In December 2022, father completed an ICWA-20 form indicating that he had no Indian ancestry. (*In re R.C.*, *supra*, C099083.) Mother apparently refused to sign an ICWA-20 form and, according to the Agency, did not provide any additional information that could be beneficial to proceed with further ICWA inquiries. (*Ibid.*)

In February 2023, we issued the peremptory writ in case No. C096846, ordering the juvenile court to vacate its ICWA findings and conduct further ICWA review before setting the section 366.26 hearing for R.C. (*M.C. v. Superior Court*, *supra*, C096846.)

In a subsequent report, the Agency noted that the Los Angeles Juvenile Court had found in 2014 that ICWA did not apply, that father had indicated he had no Indian ancestry, and that mother was uncooperative and provided no useful information to the Agency. (*In re R.C.*, *supra*, C099083.) Based on a LexisNexis search it conducted in February 2023 for possible maternal relatives, the Agency mailed ICWA-20 forms to

persons found in the search.  (*Ibid.*)  The Agency received a single response from Sergio C., listing no relationship to R.C. and denying that he had Indian ancestry; mother later said Sergio C. was not related.  (*Ibid.*)

In March 2023, mother reiterated that she did not have Indian ancestry on her mother's side, as her maternal grandparents were from Mexico and of Hispanic descent, and that, because she was unaware of her father's identity, she could not make any claims regarding her paternal ancestry.  (*In re R.C.*, *supra*, C099083.)  She completed an ICWA-20 form stating she was unable to answer because she did not know her father.  (*Ibid.*)  Given the above, the Agency reported it intended to request an ICWA finding in the matter.  (*Ibid.*)

At the rescheduled section 366.26 hearing for R.C. on July 17, 2023, the juvenile court terminated mother's and father's parental rights, but did not enter any updated ICWA finding.  (*In re R.C.*, *supra*, C099083.)  Mother appealed on ICWA grounds in case No. C099083.  In April 2024, this court conditionally affirmed the termination order but remanded for further ICWA inquiries regarding R.C.'s extended relatives.  (*Ibid.*)  The remittitur issued on July 2, 2024.

Following the conditional affirmance in *In re R.C.*, *supra*, C099083, the Agency prepared an interim review report in May 2024 documenting the Agency's additional efforts to comply with ICWA regarding R.C.  The Agency had performed a second LexisNexis inquiry on behalf of both parents in March 2024.  The Agency mailed letters inquiring about possible Indian ancestry to the relatives found in the inquiry as well as letters to mother and father.  For paternal relatives, the Agency mailed letters to four individuals, including Maria M., Juan M., Lorena M., and Miguel M.  For maternal relatives, the Agency mailed letters to 11 individuals, including Topacio C.; Martha D-P.; Mario C.; Hector C.; Christina D.; Mario C., Jr.; Christina C.; Servando C.; Sergio C.; Sergio C., Jr.; and Jose C.  The Agency did not receive any responses back from the individuals contacted, including mother or father.  Based on the available information, the

Agency stated there was no reason to believe R.C. was an Indian child. It therefore asked the juvenile court to find the ICWA did not apply to R.C. and to reaffirm the termination of parental rights as to R.C.

At a hearing on June 5, 2024, the juvenile court found, based on the Agency's May 2024 interim report, that the ICWA did not apply to R.C. The court also affirmed its order terminating parental rights to R.C. The court did not make any findings regarding A.C. or S.C. during the hearing.

At a subsequent hearing in July 2024, mother did not object to guardianship as the permanent plan for A.C. and S.C. During the hearing, the juvenile court asked whether there had been a previous ICWA finding, and the Agency responded no. The Agency stated that it would "need to conduct inquiries" at a later date. The court ordered guardianship as the permanent plan for A.C. and S.C., maintained them as dependents, and set a further review hearing for them.

Mother appealed the juvenile court's June 5, 2024, order finding the ICWA did not apply to R.C. and affirming the termination of her parental rights as to him.[3] She does not challenge any of the juvenile court's July 2024 orders concerning the legal guardianships for A.C. and S.C.

## DISCUSSION

Mother asks us to "conditionally reverse the termination of parental rights in R.C.'s case and remand each of the children's matters back to the juvenile court with instructions to comply with state and federal law vis-à-vis the ICWA." She argues the Agency's additional ICWA inquiry efforts were inadequate and do not support the juvenile court's finding that ICWA did not apply to R.C. Specifically, mother contends the Agency's second LexisNexis search in 2024 for maternal and paternal relatives, and

---

[3] Although the notice of appeal filed by trial counsel states that the appeal is taken from the juvenile court's June 5, 2024, finding that the ICWA did not apply to all the children, the court made the ICWA finding with respect only to R.C. on the day of the hearing.

6

its mailing of ICWA correspondence to persons identified in the search, was insufficient to discharge ICWA's duty of inquiry. We disagree.

*Applicable Law*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA . . .), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125; see § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is

7

an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

On appeal, we review ICWA findings and orders for substantial evidence. (See *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) A finding that ICWA does not apply is "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) The juvenile court's "fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

*Analysis*

In challenging the Agency's additional ICWA inquiries, mother first argues that, although the Agency informed the juvenile court that it had mailed letters to several individuals it believed to be maternal and paternal relatives based on the 2024 LexisNexis search, the Agency did not provide the juvenile court with any of the search records or letters, and there is no documentation showing how the list was created, what the search entailed, any of the identified individuals' actual relation to R.C., what was communicated to these people, and why the Agency failed to contact them by phone.

While it is true that the Agency's interim report did not specifically identify the nature of the relationship between R.C. and the relatives identified in the 2024 LexisNexis search to whom it mailed ICWA correspondence, evidence contained in other dependency reports found in the record show that the Agency reached out, albeit unsuccessfully, to several known extended relatives. For example, the Agency sent a "letter[] inquiring about [R.C.'s] possible Indian ancestry" to Maria M., the paternal aunt with whom R.C. and his sisters were placed for several years. The Agency sent similar letters to Topacio C. (R.C.'s adult maternal half-sister) and to Servando C. (R.C.'s adult maternal half-brother). None of these extended family members responded to the Agency's inquiry letters. Nevertheless, these were the individuals we noted the Agency

8

had failed to contact when we remanded for further ICWA review after conditionally affirming the parental termination order in *In re R.C.*, *supra*, C099083. The Agency has thus rectified that deficiency.

In addition, at the June 5 hearing where the juvenile court found the ICWA did not apply to R.C. and reaffirmed the termination of parental rights, mother did not object to the Agency's interim report or argue the Agency had failed to specifically identify how the contacted individuals were related to R.C. Nor did mother assert at the hearing that one or more of the identified individuals were not extended relatives.

Although it does not appear the Agency contacted the paternal grandparents as mother argues, not all paternal relatives had to be contacted before the ICWA inquiry can be deemed sufficient. (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) Our Supreme Court has made clear that reversal is not required simply because "every possible extended family member has not been asked about the child's Indian ancestry." (*Ibid.*)

Mother also argues the Agency once again failed to contact maternal grandparents and a maternal great-aunt. However, mother's own mother (maternal grandmother) died when she was four years old. And mother did not know the identity of her father (maternal grandfather) as he was not listed on her birth certificate and, apparently, she had no contact with him growing up.

Section 224.2 does not " 'require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.' " (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) And, as we previously recognized in *In re R.C.*, *supra*, C099083, R.C.'s maternal great-aunt does not qualify as an " 'extended family member' " under ICWA and related state law. (25 U.S.C. § 1903(2) [defining " 'extended family member' " to include "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"]; § 224.1, subd. (c) [adopting ICWA definition of "extended family member"].) Thus, the fact that the Agency could

9

not, or did not, contact the unknown maternal grandfather or maternal great-aunt does not render the ICWA inquiry deficient.

The record also belies mother's claim that the Agency failed to ask the parents for familial contact information. In addition to the extended relatives the Agency sent ICWA letters to after the 2024 LexisNexis search, the Agency's interim report notes that it sent the same letters to mother and father. Neither mother nor father responded. Mother also refused on multiple occasions to fill out an ICWA-20 form, although she ultimately filed at least one during the proceedings. And, during a hearing in December 2022 at which mother was present, the Agency's counsel specifically asked whether mother knew "if her family members know if they may have Indian ancestry?" Mother's counsel responded, that "at this point, she doesn't know anyone in her family that would know further information because the father is not listed on her birth certificate." The Agency's counsel replied, "*Then we would ask that the mother provide her family's contact information so that the Agency can make a proper inquiry*." Mother's counsel stated she would ask mother whether she had any further contact information, and, if so, would provide it to the Agency within a week. Nothing in the record shows mother provided the Agency with any additional contact information.

To the extent mother argues the Agency was required to follow-up its ICWA correspondence with phone calls, she cites no authority to support this proposition. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408, quoting *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [a point asserted without argument and authority "is deemed to be without foundation and requires no discussion by the reviewing court"].) While the Agency does have an affirmative and continuing duty of ICWA inquiry (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1125; § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a)), the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053.)

In this case, father has never wavered from his position that he has no Indian heritage on either side of his family, nor has mother ever wavered from her position that she has no maternal Indian heritage (as her maternal relatives are from Mexico and are of Hispanic descent). (*In re R.C.*, *supra*, C099083.) While she has no information about the identity of her father, the Agency contacted at least 11 individuals it believed to be her relatives based on the 2024 LexisNexis search, including two of her adult children (R.C.'s half-siblings). None of those individuals responded to the Agency's ICWA inquiry letter or provided the Agency with information indicating mother's unknown paternal relatives have Indian ancestry. Likewise, none of father's extended relatives, including the paternal aunt with whom the children were placed for four years, responded to the Agency's ICWA correspondence indicating any paternal Indian heritage.

Under these circumstances, the Agency has satisfied its continuing ICWA inquiry duties as to R.C., and sufficient evidence supports the trial court's finding that R.C. is not an Indian child. We express no opinion on issues related to A.C. and S.C., which are not properly before us in this appeal.

## DISPOSITION

The juvenile court's June 5, 2024, order (finding that the ICWA does not apply to R.C. and reaffirming the termination of parental rights as to him) is affirmed.

        /s/                   
        MESIWALA, J.

We concur:

 /s/                  
ROBIE, Acting P. J.

 /s/                  
FEINBERG, J.